†PROCTOR & GAMBLE v. S. L. SNODGRASS, ADM'R.

1. JUDGMENT NON OBSTANTE VEREDICTO DENIED WHERE BILL OF EXCEPTIONS DOES NOT SET OUT ALL THE EVIDENCE.

On the allegations of the pleadings hereinafter stated, the defendants were not entitled to a judgment in their favor on such pleadings, and the bill of exceptions taken by them, after verdict and judgment against them, not containing the whole of the evidence, and merely a statement that evidence tending to prove each and every allegation of the petition had been offered by the plaintiff, and that the defendant had offered evidence to prove the truth of each and every allegation contained in the answer, so far as the record shows, the trial court did not err in overruling the motion of the defendants for a judgment in their favor, *non obstante veredicto.*

2. ADMISSION OF CONVERSATIONS AND PAPERS TO IDENTIFY SUBJECT MATTER OF A CONTRACT.

Evidence offered by the plaintiff tending to show that shortly before the execution by the parties thereto, of the written contract sued on, the plaintiff and defendants had a conversation as to the buildings and improvements shown on a certain plat then exhibited by defendants to plaintiff, and which buildings the defendants proposed to erect, and to superintend the erection of which the services of plaintiff were desired, together with such plat so exhibited, was properly received for the purpose of identifying the subject matter of such written contract.

3. TERMS NEED NOT BE UNDER SEAL TO MAKE A VALID CONTRACT.

The written contract between the parties, on which the action of the plaintiff is founded, if it provided for the superintendence by the plaintiff, of the erection of the buildings and improvements therein mentioned, until their full completion, on the terms therein specified, was a valid and binding contract, and on a good consideration, though not under seal.

4. EMPLOYMENT WITHOUT DURATION DETERMINABLE AT PLEASURE OF EITHER PARTY.

Such contract did not expressly, or by fair implication, provide that it was to continue in force until the final completion of the buildings and improvements therein referred to. It was therefore terminable by either of the parties thereto at his or their pleasure, and only fixed the terms of the contract while it remained in force.

5. CONDUCT OF PARTIES WITH REFERENCE TO A CONTRACT THROWS GREAT LIGHT UPON THE INTERPRETATION IT SHOULD HAVE.

Where the meaning of a contract is doubtful, the conduct of the parties thereto with reference to it, throws great light upon their intention in making it, and the interpretation which should be given to it. The fact that if this contract is to have the interpretation claimed by plaintiff, he would not have been entitled to any payment thereon until the completion of the work, and that payments were regularly made during its progress, and the further fact that during the time plaintiff was so engaged, the defendants, apparently without objection, greatly lowered the amount to be paid for his services, go far to show that it was not the intention of the parties to the contract, to stipulate that it should continue until all of the buildings and improvements were completed.

Error to the Court of Common Pleas of Hamilton county.

SMITH, J.

The plaintiffs in error in this proceeding seek a reversal of a judgment rendered against them in an action brought by Silas L. Snodgrass, now deceased, to recover from them the damages which he claims he has suffered from the breach by them of the written contract hereinafter set out. It is alleged that the court of common pleas erred, first, in overruling the motions of the defendants below for a judgment in their favor on the pleadings, and after verdict, for a

---

†This judgment was affirmed by the supreme court, without report, 53 O. S. 644.

judgment *non obstante veredicto.* Second, in admitting certain parol evidence as to what took place between the parties prior to the execution of the contract in question, and, third, in the charge given by the court to the jury, and particularly as to the construction placed upon the contract by the court, as to the length of time it was to run.

The petition of the plaintiff averred substantially that for many years before 1886 he had been a contractor and builder in this city, and that in February, 1885, the defendants exhibited to him the plans of thirty buildings, comprising a plant for soap and candle factories and warehouses, which they were about to erect at Ivorydale, and invited a proposition from him to discontinue his old business and take entire charge of the whole job of such buildings and improvements as superintendent, and devote his whole time and skill to the work. That thereupon, on February 6, 1885, he made a proposition to them in writing, which they accepted on the same day, and which proposition and acceptance were as follows:

"Cincinnati, Feb. 6, 1885.

"Messrs. Proctor & Gamble:

"Sirs—I propose and agree to superintend your buildings and improvements at Ivorydale, in this county, for the compensation of eight dollars per day, Sundays excepted, and agree to give all my time, skill and experience to the work, and render a full and correct account of all expenses, without any perquisites or commissions, excepting the above sum. Any tickets furnished by you to the works to be deducted at the monthly rates of the same.                 Yours truly,

S. L. SNODGRASS.

"We accept and agree to this proposition.

PROCTOR & GAMBLE."

That thereupon plaintiff commenced said employment, and fully complied with said contract so long as he was permitted by defendants to do so. But about July 16, 1887, without any fault on his part, he was wrongfully discharged by defendants, and another superintendent employed and put in charge of said buildings and improvements. That they were not then and are not now, (August 4, 1888), completed and finished, but said work is still in progress and unfinished. That when he was discharged, said plaintiff was, and ever since has been ready, able and willing to perform the contract on his part, and did so until he was discharged. That when he was discharged, but eighteen of said buildings were completed and in use; twelve others had been commenced and were under way, and the remaining five had not been commenced. That during the progress of the work, the compensation of plaintiff was verbally reduced by mutual consent to $6 per day for the remainder of the job. That by reason of the said wrongful discharge, plaintiff has been damaged in the sum of $2,500. That he has demanded payment of so much of said sum as he would have earned if he had not been discharged, less what he has earned up to July 16, 1888, and payment was refused. Wherefore he prays judgment for $2,500.

The answer contained two defenses. The first admitted that the plaintiff had for many years been a builder by occupation—that the agreement set forth in the petition was made. That the plaintiff was in their employ from February, 1885, to July 16, 1887; that the defendants changed the compensation to $6 per day during the time he worked for them, and that defendants terminated the employment July 16, 1887; that up to that date they had built eighteen buildings, seven were in process of construction, and there were four or five others which defendants intended to erect at some future time, and it denied all the other allegations of the petition.

For a second defense, they claimed that the plaintiff was incompetent and unskillful, and that for these reasons they discharged him. These averments of new matter were denied by the reply.

The case having been tried to a jury, a verdict was rendered for the plaintiff. A motion for a new trial was made and overruled, and a bill of exceptions was duly allowed, which contained the charges given to the jury with the exceptions thereto; the ruling of the court as to the admission of certain evidence, and a statement that evidence tending to prove each and every allegation of the petition had been offered, and that the defendants had offered evidence tending to prove the truth of each and every allegation of their answer. The evidence itself was not set out.

We consider the errors assigned in the order named.

First—Should the court have rendered a judgment for the defendants on the pleadings, or notwithstanding the verdict?

The counsel for the plaintiff in error has argued at great length, 1st, that even if the proposition of Snodgrass, accepted by the defendants, was to superintend the buildings referred to their completion, that it was, so far as that was

concerned, not binding upon the defendants, because it was not under the seal of the parties; and, 2nd, that if what was done amounted to a legal contract, that by its terms there was no agreement for a fixed or determinate period, but the employment was terminable at the will of either.

The first of these claims seems to be founded on what is said in Anson on Contracts, page 17, where he states in four propositions, the several modes in which a contract may originate. It is urged that the case at bar can come only under the first of these propositions, viz.: The offer of a promise, and its acceptance by simple assent, which in English law applies only to contracts under seal." But we are of the opinion that if this writing, if sealed by the parties, would make a good contract under our law, it would be just as binding without a seal. But in our view it also comes fairly within the provisions of both subdivisions 2 and 4. No. 2 is this: It may originate "in the offer of an act, for a promise, as if a man offers services, which, when accepted, bind the receiver to rewarding for them." And No. 4, "in the offer of a promise, in which case the offer is accepted by the giving of a promise." In the case at bar, Snodgrass offered an act, viz.: the performance of certain services on certain terms. These services were not only rendered, in part at least, but the offer itself was accepted as made, and the proposition and terms agreed to by the defendants, and it is thus brought fairly within both of these subdivisions, there having been the offer both of an act, and of a promise by Snodgrass to do certain things, on the promise of defendants to pay him the stipulated price therefor, and defendants gave such promise by agreeing to the proposition as made.

As to the second reason assigned, that the petition on its face showed that either party had the right to put an end to the contract at any time, and therefore that the plaintiff had no right to maintain the action, we may say that whatever may be the true construction of the written contract, of which we will speak hereafter, there was in the petition an allegation that after the contract was made, and while the work under it was in progress, the compensation to be paid Snodgrass under the same, was verbally modified by the mutual consent of plaintiff and defendants to $6.00 per day for the remainder of said job." The effect of this allegation, when taken in connection with the contract itself, and the other averments of the petition, seems to be, that the plaintiff was thereafter to have $6.00 per day for his services, instead of $8.00 as provided by the original contract, and that he was to superintend the whole work until its completion. If the original contract did not provide that the plaintiff was to do this, and the contract as modified did do so, and fixed a lower rate of compensation, this might be done by parol, for it would be on a good consideration, and it would then be binding upon both parties—the one to give his superintendence during the whole period, and the other to receive such services and to pay for them at the stipulated price; and if this be the meaning of the allegation (and it is fairly open to this construction), the court properly overruled the motion of the defendants for a judgment in their favor on the pleadings, and the evidence not being before us, and the bill of exceptions stating that evidence was offered tending to prove every averment of the petition, we cannot say that the court erred in refusing to grant the motion of defendants for a judgment notwithstanding the verdict.

Second—Did the court err in receiving evidence over the exception of the plaintiffs in error?

The bill of exceptions states what occurred as to this substantially as follows:

"The plaintiff offered evidence tending to show * * * that plaintiff and defendants herein talked together over the buildings and improvements shown on a certain plan marked Exhibit "B," attached to this bill of exceptions and made a part thereof, and that Gamble told said plaintiff that the said Proctor & Gamble were about to build the buildings thereupon delineated, at Ivorydale, Hamilton county, Ohio. That said buildings were to be 50x150 feet, and that there was to be thirty in all, counting the framing houses, five in number, and 300 feet long, as two buildings each. That said buildings were to be built of brick and stone, and were to be from two to three stories in height. To

the admission of said evidence the defendants objected, which said objection the court overruled, to which overruling the defendants duly excepted. And plaintiff also offered said plan, Exhibit "B," in evidence, to which defendants objected, which objection the court overruled, and to which ruling defendants excepted."

It may be stated further in this connection, that in the charge of the court to the jury, much of the evidence was practically withdrawn from their consideration. The court said as to this:

"Now so far as there is evidence tending to prove what took place before this writing was entered into, you are authorized to look into that for this purpose only—for you to determine what the parties had in mind by the use of the phrase 'buildings and improvements;' you can take nothing else into consideration. In those previous conversations they speak of something that is to take place in the future, something executory in its character. You understand me, this must be utterly excluded, because this part of it is embodied in their writing, and they must stand by it." * * * "You can look into the conversations they had, and what they did, for the sole purpose of throwing a light upon what the plaintiff and defendants meant on the 6th day of February, 1885, by the phrase 'buildings and improvements' which you find in this written proposition."

In Meara v. Holbrook, 20 O. 147, it is decided "that extrinsic parol evidence is always admissible to give effect to a written instrument, by applying it to its proper subject matter, by proving the circumstances under which it was made, thereby enabling the court to put themselves in the place of the parties with all the information possessed by them, the better to understand the terms employed in the contract, and to arrive at the intention of the parties," and Judge Ranney, in announcing the opinion of the court, further says, "that such evidence may be received to advise the court what were the motives and inducements that led to the contract, and the object to be attained by it."

As this contract related to the superintendence of the buildings and improvements of defendants at Ivorydale, we think it was competent to show by parol, and by the plat, what they were, and that so much of the evidence as was received and not withdrawn by the court from the consideration of the jury, was properly received. It is unquestionably true that no parol evidence was admissible to incorporate any new terms into the written contract, as that it was agreed that the superintendence was to be for a definite period, or during the erection of all the buildings—as to this what was said in the contract must control, and we think the evidence received did not undertake to do this.

The only remaining question is, whether the court erred in the charge given to the jury—and in the first place, as to the meaning of the contract as to the time the superintendence was to continue. As we understand it, the substance of the instruction given on this point was, that if the jury found that the proposition of Snodgrass to the defendants to superintend their buildings and improvements at Ivorydale, for a compensation of $8.00 per day, Sunday excepted, related to the buildings and improvements which were marked on the plat exhibited by them to Snodgrass, that this was not a contract from day to day, to be terminated at any time by either of the parties, but in effect it was, that Snodgrass was bound to superintend the erection of such buildings to their completion, and that the defendants were bound to allow him to do so, and to pay him therefor at the agreed rate, unless defendants, on account of the incompetency or negligence of Snodgrass, were at liberty to discharge him. Is this the true construction of the contract as written, when read in the light of the evidence, showing the circumstances surrounding the parties when it was entered into?

On a careful consideration of this question, we are of the opinion that this holding of the court of common pleas is not correct. There is certainly no express statement in the writing that the superintendence or employment was for any definite period, or until the whole work was finished; nor do we see that this can reasonably be implied from the language used. We have no doubt but that both of the parties to the contract expected that the employment of Mr. Snodgrass would continue for some time. He was to give all of his time, skill and experience to the work of superintendence (clearly while his employment continued), and he was by the original contract, to receive as his compensation $8.00 per day (Sundays excepted) also while his services under this arrangement were

rendered. But the point of difficulty is this—how can it be said for these parties. that the employment of Snodgrass was to continue until the buildings and improvements were completed, when they themselves have not said so? The fact that prior to the making of the contract a plan was exhibited by defendants to Snodgrass, marking the site of some thirty buildings, without showing much else as to the size, height, or the materials of which they were to be built, can throw no light on the question as to the time for which the contract was to run, and this as well as the stipulation in regard to no payments being required for Sundays, was as applicable to a contract determinable at the pleasure of either party, as to one that contemplated an employment of Snodgrass for a definite period, or until all of the buildings and improvements were completed.

As has been said, the plat and parol evidence were only admissible or received for the purpose of identifying the buildings and improvements referred to in the written contract. How, then, looking at the writing in the light of this evidence, can it be said that the contract was to continue until the improvements were finished? Does it not rather appear that they had declined to make stipulations which might bind them for many years—the one to serve and the other to receive and pay the stipulated price for such services? If they had desired to do this, it could have been easily done, and then we think there could have been no doubt but that it would have been binding upon both; and if plaintiff were discharged without sufficient reason, that the defendants would have been liable for the damages resulting to him from their breach of the contract. But where the contract does not, in express terms, or by fair implication, fix the time for which the employment is to continue, it must be held to be subject to be terminated at the pleasure of either of the parties. The case of Coffin v. Landis, 46 Pa. St. 427, is a strong authority in support of this view. See also 73 Ill. 318; 14 Wall. 570; 6 C. B. N. S. 236. The cases cited on this point by the defendant in error, are not in conflict with the view taken, for in those cases the employment was for a definite period, or for a time that could be definitely fixed.

It seems to us that the construction placed on this contract by the parties themselves, goes very far to show that it was not their intention to bind themselves, as it is claimed by the plaintiff below that they did. In the first place, if it was a contract for the superintendence of the work of the erection of these buildings until completed, as there was no provision in the contract as to the time when the payment therefor should be made, Snodgrass would not have been entitled to receive any compensation for his services until the job was finished. Surely this could not have been in the contemplation of the parties. The work might last for many years, and had in fact, progressed for nearly three years when Snodgrass was discharged. But as we understand it, the plaintiff was regularly paid, daily or weekly. At least there is no claim for services actually rendered, and there can be no question but that those were regularly paid for, and it goes far to show what the understanding of the parties was as to this matter. And the conduct of the parties as to the change of the rate of compensation to be paid, is another evidence that the contract was not supposed by them to have been intended to continue until the improvements were completed, for if it was, why should the plaintiff, without any consideration (on his theory) consent to receive $6 oo per day instead of $8.00, to which he was entitled? It seems to be a clear recognition that his employment did not last until the job was completed, and that the defendants were at liberty to put an end to the arrangement and make new terms, and in a case, where the meaning of a contract is doubtful, the conduct of the parties, interpreting it, throws great light on the meaning and the intention of the parties in making it.

For these reasons we are of the opinion that the judgment of the court of common pleas should be reversed and a new trial awarded. If our view of the original contract in this respect is the correct one, and it was the only contract made by them, the plaintiff would not in any event be entitled to recover. But

if it be true, as alleged in the petition, that during the time the work was in progress "the compensation was verbally modified by the mutual consent of plaintiff and defendants to $6.00 per day for the remainder of the job," it may be that this new agreement might fairly be held to mean that the services were to be rendered until the improvements of the defendants were completed. But it is unnecessary and premature to dispose of that question now, and the judgment will simply be reversed, and the cause remanded for a new trial, or such other proceedings as may be warranted by law.

Mortimer Matthews, for plaintiff in error.

R. S. Fulton, for defendant in error.